COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-458-CV

 

 

IN THE INTEREST OF K.W., A CHILD                                                      

 

 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Casey E. appeals the
trial court=s order
terminating his parental rights to K.W. 
We affirm.








Appellant and K.W.=s biological mother Courtney W. had known each other for approximately
eight years and had been together for ten or eleven months when K.W. was born
on October 12, 2006.[2]  On December 25, 2006, when K.W. was
approximately two months old, appellant and Courtney rushed a friend to
Arlington Memorial Hospital as a result of a drug overdose.  Both Appellant and Courtney were under the
influence of marihuana at the time; K.W. was in the van.  

Attempting only to drop their
friend off at the hospital, appellant and Courtney were stopped by a security
guard who smelled a strong odor of marihuana on both of them and suspected that
they were high.  Appellant and Courtney
were sequestered in a Aquiet room@ until Arlington police arrived. 

Upon his arrival at the
hospital, Arlington Police Officer Noe DeLaCruz questioned appellant and
Courtney about their drug use, and both admitted to smoking marihuana.  Appellant, on parole for possession of
methamphetamines and possession of chemicals to produce a controlled substance,
was arrested for parole violations. 
Courtney consented to a search of the van, and Officer DeLaCruz found
drug paraphernaliaCa pipe with
what he believed to be marihuana in it, eight to nine individual bags of
marihuana, and a scale.








The hospital staff contacted
the Department of Family and Protective Services (the ADepartment@) and made a
referral concerning K.W., stating that a young man and woman high on marihuana
had arrived at the hospital with a lady who had had a drug overdose, that they
were there with their infant child, and that the child was dirty, had a
urine-soaked diaper, reeked of urine, and smelled of marihuana.  His car seat also smelled of marihuana.  There was no evidence of marks or bruising on
K.W., and he appeared to be well fed. 
K.W. was taken into the Department=s custody that night.  Soon
thereafter, K.W. was placed in a foster home in Fort Worth.

On December 27, 2006, the
Department filed a petition for protection of a child, for conservatorship, and
for termination in a suit affecting the parent-child relationship seeking the
involuntary termination of appellant and Courtney=s parental rights to K.W.[3]








While incarcerated and during
the Department=s
investigation, appellant met with Jeanette Leong, the caseworker assigned to
K.W.  Leong provided appellant with a
service plan and discussed potential relatives K.W. could be placed with.  All potential relatives, however, were either
not interested in caring for K.W., not able to care for K.W., or disqualified
from caring for K.W. Appellant continued to correspond with Leong throughout
the course of the Department=s investigation, notifying her of address changes, asking questions
about the case, explaining the steps he was taking to comply with his service
plan, and always expressing concern for K.W. 
While appellant took every class offered to him in jailC parenting, anger management, covenant marriage and bible classes, he
was not provided an opportunity to attend a substance abuse program and,
therefore, did not.

On December 6, 2007, the case
went to trial.  The trial court heard
evidence of appellant=s history of
criminal behavior and drug abuse. 
Appellant testified to having been arrested five or six times, and
previously serving three years on drug charges. 
Appellant admitted to being under the influence of marihuana on December
25, 2006, and admitted to smoking methamphetamine in the weeks prior to K.W.=s removal.  At the time of
trial, appellant had been incarcerated for almost a year.  He was scheduled to be released on February
27, 2008.  

Leong testified that she
believed appellant was making every effort to comply with his service plan;
however, appellant=s prior
methamphetamine use was her Aprime concern@ because,
while incarcerated, appellant had been unable to complete a substance abuse
program.  He had been unable, therefore,
to demonstrate the ability to refrain from the highly addictive drug when faced
with the stress of daily life. 








With regard to K.W., Leong
testified that he had been placed in foster care where he was Athriving,@ and the
Department=s permanency
plan was for K.W. to be adopted by the foster parent he had been placed with in
December 2006 (his Afoster
mother@).  Leong opined that K.W. and
his foster mother had developed a bond and testified that K.W.=s foster mother had maintained contact with and had continued to visit
K.W. after he was placed in a second foster home.[4]


At the close of the hearing,
appellant asked the trial court to deny the Department=s petition for termination, but place permanent managing
conservatorship with the Department and give appellant the opportunity to reestablish
his parent-child relationship with K.W.

On December 17, 2007, the
trial court entered an order of termination finding that appellant had
knowingly placed or knowingly allowed K.W. to remain in conditions or
surroundings which endangered K.W.=s emotional or physical well-being and had engaged in conduct or
knowingly placed K.W. with persons who engaged in conduct which endangered K.W.=s emotional or physical well-being and that termination of the
parent-child relationship between appellant and K.W. was in K.W.=s best interest.  This appeal
followed.  

In his sole issue, appellant
challenges the legal and factual sufficiency of the evidence with respect to
the trial court=s finding
that terminating his parental rights was in the best interest of K.W.








In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the family
code, the petitioner must establish one ground listed under subdivision (1) of
the statute and must also prove that termination is in the best interest of the
child.[5]
 Because of the elevated status of
parental rights, the quantum of proof in a termination proceeding is elevated
from the preponderance of the evidence to clear and convincing evidence.[6]  The higher burden of proof in termination
cases alters the appellate standard for both legal and factual sufficiency
reviews.[7]  Both legal and factual sufficiency reviews in
termination cases must take into consideration whether the evidence is such
that a fact-finder could reasonably form a firm belief or conviction about the
truth of the matter on which the State bears the burden of proof.[8]








Accordingly, in reviewing the
evidence for legal sufficiency in parental termination cases, we look at all
the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a 
firm belief or conviction that its finding was true.   In conducting our review,  we must also disregard all evidence that a
reasonable fact-finder could have disbelieved; however, we must consider
undisputed evidence even if it is contrary to the finding.[9]  That is, we must consider evidence favorable
to termination if a reasonable fact-finder could, and disregard contrary evidence
unless a reasonable fact-finder could not.[10]  But we cannot weigh witness credibility
issues that depend on the appearance and demeanor of the witnesses, for that is
the fact-finder=s province.[11]  








In reviewing the evidence for factual sufficiency, we must give due
deference to the fact-finder=s findings and not
supplant the judgment with our own.[12]  We must determine whether, on the entire
record, a fact-finder could reasonably form a firm conviction or belief that
the termination of the parent=s parental rights would be in
the best interest of the child.[13]  If, in light of the entire record, the
disputed evidence that a reasonable fact-finder could not have credited in
favor of the finding is so significant that a fact-finder could not reasonably
have formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.[14]


 

Prompt and permanent placement of the child in a safe environment is
always presumed to be in the child=s best interest.[15]  Nonexclusive factors that the trier of fact
in a termination case may use in determining the best interest of the child
include:        

 

(1)    the desires of the child;

 

(2)    the emotional and physical needs of the child now and in the
future;

 

(3)    the emotional and physical danger to the child now and in the
future;

 

(4)    the parental abilities of the individuals seeking custody; 

 

(5)    the programs available to assist these individuals to promote the
best interest of the child;

 

(6)    the plans for the child by these individuals or by the agency
seeking custody;

 

(7)    the stability of the home or proposed placement;

 








(8)    the acts or omissions of the parent which may indicate that the
existing parent‑child relationship is not a proper one; and

 

(9)    any excuse for the acts or
omissions of the parent.[16]  

These factors are not exhaustive; some listed
factors may be inapplicable to some cases; other factors not on the list may
also be considered when appropriate.[17]  Furthermore, undisputed evidence of just one
factor may be sufficient in a particular case to support a finding that
termination is in the best interest of the child.[18]  On the other hand, the presence of scant
evidence relevant to each factor will not support such a finding.[19]  

Reviewing the record in light of these factors, the evidence shows:

 

$                  
K.W. was doing well in foster care, had passed
all early childhood intervention screenings, and was a healthy baby.  Leong testified that A[h]e=s
doing great.@ She
said that she had seen a bond develop between K.W. and his foster mother and
his foster mother had continued to keep in contact with him and visit him.   

 

$                  
Appellant exposed K.W. to drugs and drug
activity.  On the night of December 25,
2006, appellant allowed K.W. to ride in the van while he and Courtney were
under the influence of marihuana.  








 

$                  
Appellant has a history of crime and illegal drug
use.  He has not been able to complete a
substance abuse program during his incarceration because none is offered.  Appellant testified, however, that he had
done well working toward accomplishing the goals of his service plan, although
he admits that in the past he had found it difficult to obey the law outside of
an institutionalized environment. 
Appellant attempted to better himself by completing an anger resolution
seminar, a covenant of marriage class, a ABorn to Win@
bible class, and a parenting seminar.

 

Based on our review of the
entire record, and giving due consideration to the evidence that the
fact-finder could have reasonably found to be clear and convincing, we hold
that the above evidence is legally and factually sufficient to support the
trial court=s
best-interest finding.[20]  We overrule appellant=s sole issue.

Having overruled appellant=s only issue, we affirm the trial court=s order terminating his parental rights to K.W.

 

PER CURIAM

 

PANEL
F:  CAYCE, C.J.; LIVINGSTON and
DAUPHINOT, JJ.

 

DELIVERED:
July 3, 2008                            








 

 

 











[1]See Tex. R. App. P. 47.4.





[2]Appellant
and Courtney have never been married.





[3]On
October 17, 2007, Courtney filed with the trial court an affidavit of
relinquishment of parental rights voluntarily relinquishing her parental rights
to K.W.  She did not appeal the
termination of her parental rights to K.W.

 





[4]K.W.
was placed in a second foster home when his foster mother was called to
complete basic training.  At the time of
trial, the foster mother had completed basic training. 





[5]TEX. FAM. CODE ANN. '
161.001 (Vernon Supp. 2007); In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).





[6]Santosky
v. Kramer, 455 U.S. 745, 758B59,
102 S. Ct. 1398 (1982); see also Tex.
Fam. Ann. ' 161.001.





[7]In re
J.F.C., 96 S.W.3d 256, 265 (Tex. 2002); In re C.H., 89
S.W.3d 17, 25 (Tex. 2002); In re J.T.G., 121 S.W.3d 117, 124 (Tex. App.CFort
Worth 2003, no pet.).





[8]J.F.C.,
96 S.W.3d at 265-66; C.H., 89 S.W.3d at 25; J.T.G., 121
S.W.3d at 124.





[9] In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). 





[10] Id.






[11] Id.
at 573, 574. 





[12] In
re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).





[13]C.H., 89
S.W.3d at 17.





[14]H.R.M., 209
S.W.3d at 108.





[15]Tex. Fam. Code Ann. ' 263.307(a)
(Vernon 2002).





[16]Holley
v. Adams, 544 S.W.2d 367, 371B72
(Tex. 1976).





[17]C.H., 89
S.W.3d at 27.





[18]Id. 





[19]Id. 





[20]See
In re S.M.L., 171 S.W.3d 472, 480 (Tex. App.CHouston
[14th Dist.] 2005, no pet.)(holding clear and convincing evidence
existed that termination of father=s parental rights was in the
child=s
best interest where, among other factors, father was incarcerated at the time
of the termination hearing and had a pattern of criminal and violent conduct).